**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOLENE HUNT,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:18-cv-01757** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **UNIVERSITY OF PITTSBURGH** | : | |
| **MEDICAL CENTER, PINNACLE,** | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Defendant University of Pittsburgh Medical Center, Pinnacle

("Defendant")'s motion to dismiss (Doc. No. 10) Counts I through VII of Plaintiff Jolene Hunt

("Plaintiff")'s amended complaint (Doc. No. 9) pursuant to Federal Rule of Civil Procedure

12(b)(6). For the reasons provided herein, the Court will grant in part and deny in part the

motion.

## I.      BACKGROUND[1]

Plaintiff, an adult resident of Pennsylvania, was previously employed with White Rose

Ambulance Service ("White Rose") from October 24, 2017 to March 3, 2018, after White Rose

was acquired by Defendant and made "a part of [Defendant's] 'Community LifeTeam.'" (Doc.

No. 1 ¶¶ 5, 7.) During her employment, Plaintiff "was a dispatcher for 911 calls, dispatching

ambulances for emergency medical situations, transport[ing] wheelchair vans . . . and []

dispatch[ing] ambulances for psychiatric transport[,]" in addition to handling paperwork. (<u>Id.</u>

¶¶ 9-10.) While employed with White Rose, Plaintiff communicated with other individuals

about her medical condition, "including her bipolar disorder condition and need for continuing

---

[1] Unless otherwise noted, the factual account provided herein is derived from Plaintiff's amended
complaint. (Doc. No. 9.)

treatment and medications." (Id. ¶ 11.)  Plaintiff was granted "time off for treatment" and was permitted "to take her medications as needed." (Id. ¶ 12.)

In connection with Defendant's acquisition of White Rose, Defendant "required all White Rose employees to go through another hiring process[,] stating that all employees in good standing would remain employed." (Id. ¶ 13.)  In the course of this process, Plaintiff "noticed questions relating to medical conditions or genetic [] issues" that "seemed very intrusive," but nonetheless completed the application for employment for Defendant and "stat[ed] in the application (as required by [Defendant]) that she had taken medication for bipolar disorder, anxiety[,] and depression." (Id. ¶¶ 14-15.)[2]  During this process, Plaintiff also "indicated that she had been charged with two misdemeanors and that a trial was coming up," but also "indicated on the application that although she had been charged, she was not as of yet convicted." (Id. ¶ 17.)  The subject charges – which consisted of receipt of stolen property and "theft of leased services due to an issue with a rental company wherein she had rented a washer and a dryer" – were originally felony charges, and Plaintiff pled not guilty to these charges. (Id. ¶¶ 17-18.)  In the course of the adjudication of these charges, the District Attorney "advised in a court hearing that their office was reducing the charges to misdemeanors[,] [h]owever, a trial was still scheduled." (Id. ¶ 19.)

Defendant's website states that it "conducts a background check on each final candidate for employment[,]" and that "[t]hese background checks include a criminal record check through a third party site." (Id. ¶ 20.)  As it pertains to Plaintiff, Defendant conducted a criminal background check that included "a review of the records of [the] York County Clerk of Courts."

---

[2] Defendant "also asks questions in the application or addend[a] about whether applicants have diabetes, stroke, cancer, heart problems[,] or other illnesses or diseases." (Doc. No. 14 ¶ 16.)

(Id. ¶¶ 20-21.)  According to Plaintiff, Defendant utilized EPatch, a third-party website that

provides criminal history information in Pennsylvania for purposes of facilitating criminal

background checks, in order to ascertain her criminal history information.  (Id. ¶¶ 28-29.)[3]

Following its use of this site to learn Plaintiff's criminal history information, Defendant informed

Plaintiff "that [it] had determined that [Plaintiff] had misrepresented her pending charges and

was deemed not eligible for employment."  (Id. ¶ 32.)  Defendant then "rescinded [Plaintiff's]

offer for employment by letter dated February 22, 2018[,] stating that she had criminal charges"

included on its "list of prohibited offenses," which Plaintiff states is false.  (Id. ¶ 33.)  The letter

reads, in pertinent part, as follows:

> As part of the application process, you stated that you had two misdemeanor
> charges pending against you.  In review of the records of the York County Clerk
> of [C]ourts, you have been charged with one felony count of Theft of Leased
> Property and one felony count of Receiving Stolen Property.  Both of these crimes
> are on UPMC Pinnacle's List of Prohibited Offenses.
>
> As a result of your misrepresentation of your pending charges and in accordance
> with UPMC Pinnacle's HR Policy #6.1 you have been deemed not eligible for
> employment with UPMC Pinnacle and we find it necessary to rescind your offer
> of employment.

(Doc. No. 9-1 at 2.)

In the course of the events described above, Plaintiff "never received any required notices

for background checks pursuant to that required by state or federal law either prior to, or after,"

Defendant's review of York County's records to which Defendant referred in the letter

rescinding Plaintiff's offer of employment.  (Id. ¶ 35.)  Further, Plaintiff "explained to

[Defendant] that the record was inaccurate and that they should do further due diligence to obtain

---

[3] As stated in Plaintiff's amended complaint, EPatch "was created and is maintained in
accordance with Pennsylvania's . . . Crimes Code," and the Act "also directs the Pennsylvania
State Police [] to disseminate criminal history data to criminal justice agencies, non-criminal
justice agencies[,] and individuals on request."  (Id. ¶ 30.)

accurate information[,] even offering [Defendant] the right to discuss the matter with her defense attorney or the district attorney's office[,]" which Defendant declined. (Id. ¶¶ 36-37.)[4] Plaintiff also asserts that she did not misrepresent her pending charges to Defendant because the district attorney's office informed her legal counsel in December of 2017 that her charges "would be reduced from felonies to misdemeanors[,]" and that the district attorney's office ultimately "requested a [n]olle [p]rosequi of [her] charges on August 29, 2018." (Id. ¶¶ 47-48.) Plaintiff maintains that her termination resulted from Defendant's "knowledge of her disability and its decision not to accommodate her as White Rose had while she worked for them" and that Defendant "retaliated against her due to her bipolar condition when it chose to rescind her offer due to her disabilities." (Id. ¶¶ 49-50.)[5]

Following the aforementioned events, Plaintiff initiated the above-captioned action by filing a complaint against Defendant in this Court on September 5, 2018. (Doc. No. 1.) After Defendant moved to dismiss the first complaint on November 16, 2018 (Doc. No. 7), Plaintiff filed an amended complaint (Doc. No. 9), rendering Defendant's motion moot.[6] On December 17, 2018, Defendant filed the instant motion to dismiss the amended complaint pursuant to

---

[4] Plaintiff also asserts that "to the degree an explanation was permitted, [Defendant] was dismissive or non-responsive about [Plaintiff's] explanation" and "fail[ed] to investigate it further despite . . . allowing other potential employees and existing employees to provide information regarding their adverse records to offer an explanation." (Id. ¶ 43.)

[5] Plaintiff also notes that after the rescission, she filed a claim with the Pennsylvania Human Relations Commission "for disability discrimination and retaliation," and states that "she reasonably believes that her rights were violated under the Genetic Information Non-Discrimination Act and is seeking exhaustion thereby . . . because [Defendant] [s]olicited information on her genetic data on its application and during her application process." (Id. ¶ 51.) Plaintiff states that "she will seek leave to amend once she has exhausted these claims." (Id. ¶ 52.)

[6] See, e.g., Pippett v. Waterford Dev., LLC, 166 F. Supp. 2d 233, 236 (E.D. Pa. 2001) ("The filing of an amended complaint generally renders a pending motion to dismiss moot." (citing Adams v. Goodyear Tire & Rubber Co., No. 96-4228-SAC, 1997 WL 833288, at *1 (D. Kan. Dec. 19, 1997))).

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. No. 10.) Having been fully briefed, Defendant's motion is ripe for disposition.

## II.    STANDARD OF REVIEW

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although the Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. See id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III.    DISCUSSION

Defendant moves for dismissal of each count asserted in Plaintiff's amended complaint. In her amended complaint, Plaintiff asserts the following seven (7) counts against Defendant: discrimination under the Rehabilitation Act (Count I); retaliation under the Rehabilitation Act

(Count II); a violation of Pennsylvania's Criminal History Record Information Act (Count III);

wrongful discharge in violation of Pennsylvania public policy (Count IV); defamation per se

(Counts V and VI); and a violation of the Fair Credit Reporting Act (Count VII).  The Court

examines the sufficiency of each claim in turn.

A.     **Plaintiff's Claims Alleging Violations of the Rehabilitation Act of 1973 (Counts I and II)**

1.     **Applicable Legal Standard**

Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794(a), provides, in

relevant part, that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  "Thus, 'the question of whether the entity received federal funds is

important . . . in order to make out a prima facie case under the [Rehabilitation Act].'"  Dana v.

Baker Hughes, Inc., No. 4:14-cv-01861, 2015 WL 5576880, at *4 (M.D. Pa. Sept. 21, 2015)

(alteration in original) (quoting Haybarger v. Lawrence Cty. Adult Prob. & Parole, 551 F.3d 193,

198 n.3 (3d Cir. 2008)).  As previously noted by this Court, "[t]he Rehabilitation Act does not

define the term 'Federal financial assistance.'"  Id. at *5.  Rather, the regulations define the term

as follows:

> (h) Federal financial assistance means any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the Department provides or otherwise makes available assistance in the form of:
>
> > (1) Funds;
> >
> > (2) Services of Federal personnel; or

> (3) Real and personal property or any interest in or use of such property, including:
>
>> (i) Transfers or leases of such property for less than fair market value or for reduced consideration; and
>>
>> (ii) Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal Government.

45 C.F.R. § 84.3(h); see also Dana, 2015 WL 5576880, at *5 (describing the definition of "[f]ederal financial assistance" set forth in 45 C.F.R. § 84.3(h)). "[C]ourts in the Third Circuit have previously applied 45 C.F.R. § 84.3(h) to determine whether a plaintiff has adequately pleaded sufficient facts to infer that a defendant receives '[f]ederal financial assistance.'" Dana, 2015 WL 5576880, at *5 (collecting pertinent case law). "[A]n entity may receive federal financial assistance indirectly and still be considered a recipient of federal financial assistance for the purposes of the application of [S]ection 504 of the Rehabilitation Act." Bowers v. NCAA, 118 F. Supp. 2d 494, 527 (D.N.J. 2000) (citing Grove City College v. Bell, 465 U.S. 555, 564-70 (1984), superseded by statute as stated in, NCAA v. Smith, 525 U.S. 459 (1999)).

### 2.    Arguments of the Parties

Defendant argues that Counts I and II should be dismissed because Defendant is neither a federal agency nor the recipient of federal financial assistance for purposes of Section 504 of the Rehabilitation Act and, therefore, does not fall within the purview of the Act. (Doc. No. 12 at 15.) According to Defendant, Plaintiff "merely avers that [it] it is a recipient of federal financial assistance[,]" which amounts to a conclusory statement insufficient for purposes of the instant motion to dismiss. (Id. at 16.) In opposition, Plaintiff states that she "has alleged facts that she provided ambulance and emergency medical technician support for 911[,]" which "allows the [C]ourt at the very least to infer that these types of services would receive federal financial

assistance as all 911 services are supported by the Federal Communications Commission (FCC) and tend to receive federal assistance in some form, or the FCC offers such support." (Doc. No. 14 at 6.)[7]

### 3. Whether Counts I and II Should be Dismissed

The Court finds that Plaintiff has failed to allege sufficient facts that would support a plausible inference that Defendant is a "recipient of federal financial assistance" under Section 504. A review of the amended complaint reveals that the averments made at Paragraphs six, fifty-five, and sixty-one are merely conclusory statements that are "not entitled to the assumption of truth."[8] See Santiago, 629 F.3d at 130 (citation and quotation marks omitted). Accordingly, the Court finds that these statements are insufficient on their own to state a claim pursuant to Section 504. In addition, Plaintiff has failed to allege the type of federal financial assistance Defendant received and whether it falls under the interpretation promulgated by HHS. As other courts have found, the term "federal financial assistance" contemplates an entity's receipt of funds from the federal treasury or the transfer of something of value to the recipient of the assistance, such as a subsidy. See DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377, 1382 (10th Cir. 1990) (holding that in light of the ordinary meaning of the term "financial assistance," an entity receives financial assistance when it receives a subsidy); Jacobson v. Delta Airlines, Inc., 742 F.2d 1202, 1209 (9th Cir. 1984) (holding that payments that include a subsidy constitute "federal financial assistance" within the meaning of the Rehabilitation Act); Dana, 2015 WL 5576880, at *5-6 (stating that "the definition supplied by 45 C.F.R. § 84.3(h) closely

---

[7] Plaintiff's brief does not include a citation to authority in support of this proposition. (Doc. No. 14 at 6.)

[8] In the amended complaint, at Paragraphs six, fifty-five, and sixty-one, Plaintiff alleges that "UPMC receives federal financial assistance and as such is subject to Section 504 . . . and the federal regulations promulgated thereunder." (Doc. No. 9 ¶¶ 6, 55, 61.)

aligns with the existing body of federal law clarifying the types of funding that are appropriately classified as '[f]ederal financial assistance'" and noting that courts have attached importance to a transfer of funds in determining whether a party receives federal financial assistance (citing pertinent case law)); Bachman, 577 F. Supp. at 1264 ("The term 'assistance' connotes a transfer of government funds by way of subsidy, not merely an exemption from taxation." (citing Cook v. Budget Rent-A-Car Corp., 502 F. Supp. 494, 496 (S.D.N.Y. 1980); Rogers v. Frito-Lay, Inc., 433 F. Supp. 200, 204 (N.D. Tex. 1977), aff'd on other grounds, 611 F.2d 1074 (5th Cir. 1980), cert. denied, 449 U.S. 889 (1980))).  In the instant case, Plaintiff has failed to allege facts that Defendant receives a subsidy, or any other type of assistance contemplated under Section 504.[9] Accordingly, the Court will dismiss Counts I and II of Plaintiff's amended complaint.

**B.** **Plaintiff's Claim Alleging a Violation of Pennsylvania's Criminal History Record Information Act (Count III)**

**1.** **Applicable Legal Standard**

Pennsylvania's Criminal History Record Information Act ("CHRIA") mandates that an employer may use an applicant's felony or misdemeanor criminal conviction information "only to the extent to which [the information] relate[s] to the applicant's suitability for employment in the position for which he has applied."  See Pa. Cons. Stat. § 9125(b).  "Accordingly, when a potential employer considers misdemeanor and felony convictions in connection with a

---

[9] Furthermore, Plaintiff's allegations concerning "federal financial assistance" are similar to those found insufficient in other cases in this circuit, as Plaintiff has alleged no facts whatsoever detailing the scope, purpose, extent, or place of performance of any of the alleged sources of the alleged federal assistance.  See Bamat, 2019 WL 1125817, at *3 (concluding that the plaintiff had not alleged sufficient facts to support the existence of a "program or activity" for purposes of Section 504 where the plaintiff "alleged no facts whatsoever regarding the scope, purpose, extent, or place of performance of any of the alleged sources of federal funding"); Dana, 2015 WL 5576880, at *14 (finding that the plaintiff failed to allege sufficient facts as to the "scope, purpose, extent, or place of performance for any of the claimed grant awards" so as to render Section 504 applicable).

candidate's employment application, it may do so only to the extent such convictions relate to the applicant's suitability for the particular position for which he is under consideration." <u>Ceraso v. FedEx Corp. Servs., Inc.</u>, No. 2:17-cv-00003, 2018 WL 6191393, at *6 (M.D. Pa. Nov. 28, 2018) (citing <u>McCorkle v. Schenker Logistics, Inc.</u>, No. 1:13-cv-3077, 2014 WL 5020598, at *5 (M.D. Pa. Oct. 8, 2014); <u>Negron v. Sch. Dist. of Phila.</u>, 994 F. Supp. 2d 663, 667 (E.D. Pa. 2014); <u>Frankowski v. State Civ. Serv. Comm'n</u>, No. 1706 C.D. 2012, 2013 WL 3198733, at *4 (Pa. Commw. Ct. June 25, 2013)). "'Suitability' is not defined by [] CHRIA, while Black's Law Dictionary defines suitable as 'fit and appropriate for their intended purpose.'" <u>Id.</u> (citing <u>Suitability</u>, BLACK'S LAW DICTIONARY 1572 (9th ed. 2009)).

### 2. Arguments of the Parties

As to Plaintiff's CHRIA claim, Defendant argues that dismissal of this claim is warranted because "[t]he letter attached to Plaintiff's [a]mended [c]omplaint clearly establishes that Plaintiff's employment offer was rescinded because she misrepresented her criminal history to [Defendant] and not because of her criminal history information file." (Doc. No. 12 at 18.) Specifically, Defendant notes that the pertinent portion of the letter reads as follows: "[Y]ou stated you had two misdemeanor charges pending against you. In review of the records of the York County Clerk of Courts, you have been charged with one felony count of [t]heft of [l]eased [p]roperty and one felony count of [r]eceiving [s]tolen [p]roperty[,]" and that as a result of "your misrepresentation of your pending charges and in accordance with [Defendant's] HR Policy #6.1 you have been deemed not eligible for employment." (<u>Id.</u>) According to Defendant, therefore, "Plaintiff's employment offer was not rescinded because of her criminal history record information file but because she misrepresented her charges to [Defendant]." (<u>Id.</u> at 19.) In response, Plaintiff argues against dismissal on the grounds that the allegations in the amended

complaint are sufficient to survive the notice pleading standard applicable at this stage of the instant case – which requires only notice pleading – and when all of Plaintiff's allegations are viewed in her favor, she has provided sufficient factual support for her CHRIA claim. (Id. at 20.)

### 3.    Whether Count III Should be Dismissed

The Court finds that Plaintiff has alleged sufficient facts that would support a plausible inference that the Defendant received her criminal history record information and did not use that information in accordance with Section 9125 of CHRIA. In the case at bar, Plaintiff alleges that Defendant received criminal history record information pertaining to Plaintiff through the use of EPatch and used that information when deciding to rescind its offer of employment to her. Therefore, Defendant did not use the criminal history information in accordance with Section 9125 of CHRIA. See Foxworth, 228 F. App'x at 155 (citing Tilson v. Sch. Dist. of Phila., No. 89-1923, 1990 WL 98932, at *4 (E.D. Pa. July 13, 1990), aff'd, 932 F.2d 961 (3d Cir. 1991)) (holding that Section 9125 allows employers to consider, when relevant in hiring decisions, convictions but not arrests). For purposes of resolving the instant motion, and cognizant of its obligation to accept the allegations set forth in Plaintiff's amended complaint as true, the Court finds that, at this early stage, Plaintiff has alleged sufficient facts to support her CHRIA claim. Accordingly, the Court will deny Defendant's motion to dismiss as to Count III of Plaintiff's amended complaint.

### C.    Plaintiff's Claim Alleging Wrongful Discharge in Violation of Pennsylvania Public Policy (Count IV)

### 1.    Applicable Legal Standard

Under Pennsylvania law, "an employer may terminate an employee for any reason, unless restrained by contract." See McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 286

(Pa. Super. Ct. 2000) (citing Henry v. Pittsburgh & Lake Erie R.R. Co., 21 A. 157 (1891)). This proposition, however, does not apply in "circumstances where a termination of an employee would violated a 'clear mandate of public policy.'" See id. (citing Geary v. United States Steel Corp., 319 A.2d 174, 180 (Pa. 1974)). "'Public policy' is to be ascertained by reference to the laws and legal precedents and not from supposed public interest." Id. at 288 (quoting Shick v. Shirey, 716 A.2d 1231, 1237 (Pa. 1998)). Such a determination requires that a court "examin[e] the precedent within Pennsylvania, looking to [the Commonwealth's] own Constitution, court decisions[,] and statutes promulgated by [the] legislature." See id.

### 2.      Arguments of the Parties

Defendant asserts that this Court should dismiss Plaintiff's claim for wrongful discharge in violation of Pennsylvania public policy because Plaintiff merely "attempts to fashion a wrongful discharge claim out of her alleged violation of CHRIA[,]" an approach that other courts have rejected. (Doc. No. 12 at 21-22) (citing case law discussing wrongful discharge claims asserted by at-will employees). Defendant also maintains that because "Plaintiff was not hired by [Defendant][,]" but, rather, "[h]er employment offer was rescinded[,]" Plaintiff cannot assert a wrongful discharge claim in violation of any public policy established by CHRIA. (Id. at 23.) In opposition, Plaintiff states that she "has sufficiently pled enough facts [demonstrating] that a public policy was violated at this early stage[,]" noting that for purposes of a Rule 12(b)(6) motion, she "is not tasked with developing all the factual bases for her claims in her initial pleadings." (Doc. No. 14 at 8.) According to Plaintiff, she "has sufficiently pled a failure to retain her position (after she had been an employe[e] of the predecessor entity White Rose for over a year) because of her criminal arrest even though no conviction occurred[,]" and

consequently, "it may at the very least be inferred that [Defendant] violated a public policy when [it] failed to retain an employee from the predecessor company." (Id. at 9.)

### 3. Whether Count IV Should be Dismissed

The Court finds that Plaintiff has failed to allege sufficient facts that would support a plausible inference that Defendant wrongfully discharged her in violation of Pennsylvania public policy. In her amended complaint, Plaintiff states multiple times that she was not hired by Defendant and that she was required to go through the application process and a background check. (Doc. No. 9 ¶¶ 13, 17, 20, 32-33, 41.) Even the attached exhibit ("Exhibit A") clearly states that Plaintiff was required to complete the application process and ultimately found not eligible for employment. (Id., Ex. A.) Only paragraphs ninety-two through ninety-five even refer to the concept of Plaintiff being hired by Defendant, stating, for example, that "[Plaintiff] . . . was not hired or retained by UPMC." (Id. ¶¶ 92-95.) Under the relevant authority, one cannot maintain a wrongful discharge claim when an offer of employment is contingent upon the results of a background check. See White, 2016 WL 1404148, at *7 (stating that "[n]ot having been employed, [the plaintiff] cannot bring a claim for wrongful discharge" (citing Enigwe v. U.S. Airways/U.S. Airways Express, 438 F. App'x 80, 83 (3d Cir. 2011))). Therefore, the Court finds that Plaintiff has failed to state a claim for wrongful discharge in violation of Pennsylvania public policy. Accordingly, the Court will dismiss Count IV of the amended complaint.

### D. Plaintiff's Defamation Claims (Counts V and VI)

### 1. Applicable Legal Standard

"Defamation, of which libel, slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements." Mzamane v. Winfrey, 693 F. Supp. 2d 442, 476 (3d Cir. 2010)

(quoting <u>Joseph v. Scranton Times L.P.</u>, 959 A.2d 322, 334 (Pa. Super Ct. 2008)).  Under the

relevant statutory framework, the plaintiff bears the burden of proving the following elements in

a defamation action:

> (1) The defamatory character of the communication[;]
>  (2) Its publication by the defendant[;]
> (3) Its application to the plaintiff[;]
> (4) The understanding by the recipient of its defamatory meaning[;]
> (5) The understanding by the recipient of it as intended to be applied to the
> plaintiff[;]
> (6) Special harm resulting to the plaintiff from its publication[; and]
> (7) Abuse of a conditionally privileged occasion[.]

42 Pa. C.S.A. § 8343(a).  Once a plaintiff has met his or her burden in establishing the

aforementioned elements, the burden shifts to the defendant to prove the following: (1) "[t]he

truth of the defamatory communication"; (2) "[t]he privileged character of the occasion on which

it was published"; and (3) "[t]he character of the subject matter of defamatory comment as of

public concern."  <u>See</u> <u>Joseph v. Scranton Times, L.P.</u>, 129 A.3d 404 (Pa. 2015) (quoting 42 Pa.

C.S.A. § 8343(b)).

"In a defamation action, the Court must make a threshold determination of whether a

challenged statement is capable of defamatory meaning."  <u>Mallory v. S&S Publishers</u>, 260 F.

Supp. 3d 453, 459 (E.D. Pa. 2017) (citing <u>Gibney v. Fitzgibbon</u>, 547 F. App'x 111, 113 (3d Cir.

2013)).  If the subject statement is not so capable, "the claim must be dismissed."  <u>See id.</u> (citing

<u>Remick v. Manfredy</u>, 238 F.3d 248, 261 (3d Cir. 2001)).  "A communication is defamatory if it

tends so to harm the reputation of another as to lower him in the estimation of the community or

to deter third persons from associating or dealing with him."  <u>Abdellatif v. Alza Wrae Indus. Co.</u>,

No. 18-cv-2297, 2019 WL 1284689, at *8 (E.D. Pa. Mar. 20, 2019) (quoting <u>Thomas Merton</u>

<u>Ctr. v. Rockwell Int'l Corp.</u>, 442 A.2d 213, 215 (Pa. 1981)).  "'Importantly, only statements of

fact, rather than mere expressions of opinion, are actionable under Pennsylvania law[,]' and '[i]n

order for an opinion to be deemed capable of defamatory meaning under Pennsylvania law, it must reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion.'" Mallory, 260 F. Supp. 3d at 459 (quoting Mzamane, 693 F. Supp. 2d at 477). Further, "[i]t is not enough that the victim of the 'slings and arrows of outrageous fortune' be embarrassed or annoyed, he must have suffered that kind of harm which has grievously fractured his standing in the community of respectable society." Id. (quoting Scott-Taylor, Inc. v. Stokes, 229 A.2d 733, 734 (Pa. 1967)).

## 2. Arguments of the Parties

Defendant argues that dismissal of Counts V and VI is proper because Plaintiff has failed to plead facts sufficient to satisfy any of the elements of defamation under Pennsylvania law, asserting that in the amended complaint, Plaintiff "does not aver what was said or written, to whom it was said or written, how it was published, and who published the statements[,]" and that "Plaintiff did not attach a copy of the alleged libelous writing." (Doc. No. 12 at 25.) According to Defendant, "Plaintiff merely avers that [Defendant] defamed her by communicating false statements of alleged criminal wrongdoing to supervisors, employees[,] and other third parties within and outside of UPMC[,]" and that absent any pleading from Plaintiff regarding the statement or a quotation of the alleged statement, "the Court cannot perform its initial duty of deciding whether the statement is capable of a defamatory meaning." (Id. at 25-26.) In contrast, Plaintiff argues that, despite Defendant's arguments, she has attached the allegedly defamatory letter to her amended complaint as Exhibit A, which, according to Plaintiff, "provides the libelous statements [and] claim[s] she lied on her application about her criminal record." (Id. at 26.) Plaintiff also maintains that Defendant "made false statements regarding her criminal record and . . . wrote a letter terminating her employment stating the same false allegations[,] knowing

[the allegations were] false[,]" and that Defendant "published the statements and writings to supervisors, employees[,] and other third parties within and outside Pinnacle."  (Id.)

### 3.    Whether Counts V and VI Should be Dismissed

The Court finds that Plaintiff has failed to allege sufficient facts that would support a plausible inference that the Defendant defamed her under Pennsylvania law.  Irrespective of the fact that Plaintiff appears to assert two defamation claims – one based on defamation by means of slander and the other one based on a theory of libel – Plaintiff has not alleged sufficient facts that would support a finding that the subject statement was defamatory in nature.  As an initial matter, the Court notes that Plaintiff's amended complaint states only that Defendant "defamed [Plaintiff] by communicating false statements of alleged criminal wrongdoing to supervisors, employees, and other third parties within and outside of UPMC."  (Doc. No. 9 at 18.)  Although Plaintiff ostensibly refers to the letter in which Defendant communicated with her regarding the manner in which her criminal charges were represented, conspicuously absent from the amended complaint are any explanation of the document alleged to be defamatory or any description of the purportedly defamatory statement made by Defendant.  In light of this Court's obligation to examine first whether the subject statement is capable of having a defamatory nature, the Court finds Plaintiff's amended complaint to be insufficient in setting forth claims for defamation.  See, e.g., Balletta v. Spadoni, 47 A.3d 183, 198 (Pa. Commw. Ct. 2012) ("As a threshold matter, we must determine whether the statements made by [the defendants] are capable of defamatory meaning." (citing Petula v. Mellody, 588 A.2d 103 (Pa. Commw. Ct. 1991))).  Accordingly, the Court will dismiss Counts V and VI of the amended complaint.

### E.    Plaintiff's Claim Alleging a Violation of the Fair Credit Reporting Act (Count VII)

#### 1.    Applicable Legal Standard

The Fair Credit Reporting Act ("FCRA") "created a regulatory framework governing consumer credit reporting" that "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." See Adeseye v. FedLoan Servicing, No. 17-cv-1126, 2018 WL 3135846, at *2 (D. Del. June 27, 2018) (internal quotation marks omitted) (quoting Seamans v. Temple Univ., 744 F.3d 853, 860 (3d Cir. 2014)). "Under the FCRA, consumer reporting agencies, or credit bureaus, 'collect consumer credit data from furnishers, such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness.'" Id. (quoting Seamans, 744 F.3d at 860). To that end, consumer reporting agencies ("CRA's") "must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" and "they are subject to suit by consumers under § 1681 [] when they fail in this regard." Id. (internal quotation marks and citation omitted) (quoting Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs., 696 F. App'x 87, 90 (3d Cir. 2017)). For a defendant to be liable under FCRA, it must be a CRA within the meaning of FCRA. See, e.g., Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 247 (3d Cir. 2012) (stating that FCRA applies only to CRA's). Under FCRA, a CRA is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer [] credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." See id. (citing 15 U.S.C. § 1681a(f)). The United States

Court of Appeals for the Third Circuit has recognized the possibility that a "company that performs background checks and assembles and sells reports containing the information is a CRA." See id. at 253 n.22 (discussing the scope of FTC guidance as to FCRA coverage).

### 2. Arguments of the Parties

Defendant asserts that Plaintiff has failed to state a claim under FCRA because the amended complaint fails to state both that FCRA applies to Defendant and that Defendant violated FCRA. (Doc. No. 12 at 27.) First, Defendant states that although Plaintiff does not maintain that Defendant is a CRA under the Act, she alleges that it used EPatch to ascertain her criminal history information, and that EPatch cannot constitute a CRA because it is a website. (Id. at 28.) According to Defendant, because "Plaintiff has failed to establish the existence of a consumer reporting agency, there can be no consumer report and [] FCRA does not apply." (Id. at 29.) Defendant also argues that the facts set forth in the amended complaint actually refute her FCRA claim because the facts ultimately demonstrate that she "was fired for misrepresenting the status of her case and not because of a consumer report prepared by a [CRA]." (Id. at 30.) Plaintiff argues in opposition that she has pled sufficient facts to support a FCRA claim because a background check has been deemed a "consumer report" for purposes of FCRA, and she has alleged that Defendant "failed to properly notice her regarding the use of [EPatch] for background checks and the decision not to hire her based upon the usage of the report" and, therefore, "has sufficiently pled at this early stage that [Defendant] is bound to follow [] FCRA" when it employs a "third party site to obtain reports on its applicants." (Doc. No. 14 at 11.)

### 3. Whether Count VII Should be Dismissed

The Court finds that Plaintiff has alleged sufficient facts suggesting that ePatch is a CRA so as to trigger obligations under FCRA on the part of Defendant and, therefore, Plaintiff's

FCRA claim should not be dismissed. As noted previously, for a party to fall within the purview of FCRA, it must be a CRA and have prepared a consumer report. See Fuges, 707 F.3d at 247-48. Therefore, Plaintiff must allege sufficient facts to plausibly suggest that ePatch: (1) "act[s] for monetary fees, dues, or on a cooperative non-profit basis"; (2) "regularly engage[s] in whole or in part in gathering or evaluating information on consumers;" (3) "the purpose of such activity must be the distribution of information to third parties engaged in commerce;" and (4) "the agency [] use[s] a facility of interstate commerce to prepare or distribute the reports." See Parker v. Commw. Fin. Servs., Inc., No. 3:08cv372, 2008 WL 2246440, at *2 (M.D. Pa. May 30, 2006) (quoting Todd v. Associated Credit Bureau Servs., Inc., 451 F. Supp. 447, 448 (E.D. Pa. 1977)); see also 15 U.S.C. §1681a(f) (defining "consumer reporting agency" for purposes of FCRA). The Court finds that the allegations set forth in Plaintiff's amended complaint meet this standard and, therefore, Plaintiff has pled sufficient facts to support an inference that ePatch is a CRA. Notably, Plaintiff alleges that ePatch is a third-party website created and maintained by the Pennsylvania State Police. (Doc. No. 9 ¶ 29-30.) Plaintiff has also averred that ePatch is required by law to disseminate criminal history data. (Id.) The Court finds that these factual allegations permit a reasonable inference that ePatch acts for "fees, dues, or on a cooperative non-profit basis" and "regularly engage[s] in gathering or evaluating information on consumers" and, therefore, permit Plaintiff to state a viable FCRA claim against Defendant. Plaintiff alleges that ePatch is directed to disseminate information to criminal justice agencies, non-criminal justice agencies, and individuals on request. (Id.) This would clearly support the inference that the purpose of ePatch's activity was to distribute information to third-parties engaged in commerce. Thus, accepting as true all factual allegations in the complaint and all reasonable

inferences that can be drawn from them, viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to support an inference that ePatch is a CRA.

Additionally, the Court finds that the amended complaint contains sufficient facts to support a plausible inference that the criminal record history check conducted by Defendant constituted a "consumer report" under FCRA.  The Court finds that, as an initial matter, a criminal background check clearly constitutes a consumer report for purposes of FCRA.  See Wright v. Lincoln Prop. Co., No. 15-3483, 2017 WL 386602, at *3 (E.D. Pa. Jan. 27, 2017) (acknowledging that "a criminal background report is considered a 'consumer report'" under Section 1681a(d)); see also 15 U.S.C. §1681a(d)(1) (defining a consumer report as "any written, oral, or other communication of any information . . . bearing on a consumer's . . . general reputation, personal characteristics, or mode of living" that is used in connection with, inter alia, "employment purposes").  The instant report from ePatch – which contained Plaintiff's criminal history information – would, therefore, fall within the scope of this definition in that it is a written communication that bears on Plaintiff's reputation.  Moreover, the Court is cognizant of other courts' treatment of FCRA as "a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it."  See Wright, 2017 WL 386602, at *3 (quoting Cortez v. Trans Union, LLC, 617 F.3d 688, 722 (3d Cir. 2010)).  In light of this instruction, as well as the relevant facts detailed in Plaintiff's amended complaint and the discussion supra, the Court finds that Plaintiff has alleged sufficient facts supporting a FCRA claim in this case, and, therefore, will deny Defendant's motion to dismiss as to Count VII of Plaintiff's amended complaint.

## IV.     CONCLUSION

Based upon the foregoing, the Court will grant in part and deny in part Defendant's

motion to dismiss.  (Doc. No. 10.)[10]  An appropriate Order follows.

_____

[10] The Court is aware that in her brief in opposition to Defendant's motion, Plaintiff appears to request leave to file a second amended complaint.  (Doc. No. 14 at 11.)  The Court is not required to grant such a request in certain types of cases, such as the one at bar, that are outside the context of actions asserted pursuant to 42 U.S.C. § 1983.  See, e.g., Snyder v. Baxter Healthcare, Inc., 393 F. App'x 905, 910 (3d Cir. 2010) (acknowledging that the general rule requiring leave to amend absent futility or inequity does not necessarily apply outside the context of Section 1983 claims).  The Court's adjudication of Defendant's motion herein does not preclude Plaintiff, however, from attempting to seek leave to file a second amended complaint in accordance with all applicable federal and local rules.  Should Plaintiff pursue such amendment, she must file a properly supported motion for leave to file a second amended complaint.  See Fed. R. Civ. P. 15(a).